# CASES DETERMINED

## IN THE

# SUPREME COURT OF JUDICATURE

## OF THE

# STATE OF NEW JERSEY,

### AT NOVEMBER TERM, 1858.

---

### THE STATE *vs.* THE PASSAIC TURNPIKE COMPANY.

1. Though the charter of a private corporation, so far as it affects public rights, must have a strict construction, as against the corporation, and most favorable to the rights of the public, the interpretation must nevertheless be reasonable and in accordance with the spirit and purpose of the law.

2. The prohibition contained in the seventh section of the charter of the Passaic Turnpike Company, "*that no gate or turnpike shall be erected on any part of the highway which has heretofore been used as such,*" was not designed to operate in a fixed locality, but to protect a subsisting right, wherever and so long as that right continued to exist.

3. When the ancient highway was vacated, and the right of the public to travel over a given locality had been terminated, the prohibition against the erection of a gate at that place also ceased.

4. Is a turnpike gate within the circle of dense city population a nuisance? *Query.*

---

Case reserved by the Court of Oyer and Terminer for the opinion of the Supreme Court, upon a motion for a new trial, after a conviction upon an indictment for nuisance.

### 217

State v. Passaic Turnpike Co.

The case was argued at June Term, 1858, before the CHIEF JUSTICE, and Justices OGDEN, HAINES, and RYERSON

*A. S. Pennington* and *W. Pennington,* for the defendants, in support of the motion.

*Barkalow* and *Woodruff, contra.*

The opinion of the court was delivered by

The CHIEF JUSTICE.   The defendants were convicted, at the Passaic Oyer, upon an indictment for a nuisance, in obstructing a highway in the city of Paterson.   The obstruction complained of was a toll-gate, kept and maintained by the defendants, across the highway.   The road, at the point where the gate is erected, was constructed and is maintained by the defendants as a part of their turnpike road.   On the trial there was an effort on the part of the state, to show the existence of a highway at the point where the gate was erected, independent of the turnpike road.   It was claimed that there was a highway there by prescription, by dedication, and of record.   There was an entire failure of evidence to establish a highway, either by prescription or by user; nor were there facts in evidence from which the jury could lawfully infer the existence of a highway by dedication.   Admitting that there was competent evidence of the lawful laying out and recording of a highway at the place in question in 1831, there is equally clear evidence that the road was vacated by lawful authority in the year 1851, prior to the time of the alleged nuisance.   The court, therefore, were clearly right in instructing the jury that, in the year 1856, at the time of the obstruction complained of, there was no highway at the point in question, other than the turnpike road constructed by the defendants.   Upon this issue, (viz., the existence of a highway where the gate was erected,) so far as can be gathered from the charge of the court, the defendants were tried and found guilty.   In this aspect the verdict is clearly against law and against evidence.

But it is now insisted (and as the state's counsel allege, it was contended at the trial,) that, admitting the existence of no other highway than the turnpike road where the gate was erected at the time of the alleged nuisance, still the defendants are guilty of a nuisance in erecting the gate.

1. Because, by the terms of their charter, the turnpike company are forbidden to erect a gate at the place in question.

2. Because the gate is within the city of Paterson, and a turnpike gate erected within the limits of a densely populous town or crowded city, is *ipso facto* a nuisance.

1. By the 7th section of the charter of the turnpike company, it is enacted that as soon as said road shall be finished from Paterson to the Little Falls, then it shall be lawful for said company to erect gates and turnpikes across the same, and to demand and receive toll at the said gates, for traveling each mile on said road, * * * * * *provided, that no gate or turnpike shall be erected or kept on any part of the highway which has heretofore been used as such.*

The proviso, it is insisted, forbids the erection of a gate in any place where the highway existed and was used at the date of the charter; and though the highway be since vacated, it is insisted that the prohibition still continues, and is perpetual. Admitting that the charter, so far as it affects public rights, must have a strict construction as against the corporation, and most favorable to the rights of the public, still the interpretation must be reasonable and in accordance with the obvious spirit and purpose of the law. The design of the legislature was to prohibit the obstruction of an existing highway by the erection of gates, and the exacting of toll from travelers upon any part of the road which the public were entitled to travel and use free of toll. The prohibition was not designed to affect a given locality, to operate in a specified place, but to protect a subsisting right, wherever and so long as that right could be lawfully exercised. When,

therefore, the right ceased, the prohibition ceased with it. When the ancient highway was vacated, and the right of the public to travel over a given locality had been determined, the prohibition against the erection of a gate ceased also. (*Cessante ratione cessat et ipsa lex.*)

Admitting, then, that the evidence offered upon the part of the state to show that a highway was laid out where the gate was erected in the year 1831, and that it subsisted as a highway at the date of the charter; admitting, also, that the gate was originally erected, in violation of the charter, across the highway, as laid out, still the evidence shows that, in 1851, that highway was vacated; that at the time of the alleged obstruction it had no existence, and consequently that the maintenance of the gate was not against the charter of the company, and could not, therefore, be deemed a nuisance.

2. It is further objected that the gate, though erected upon the road of the defendants, upon which they are authorized by their charter to take tolls, is a nuisance, because it is within the populous part of the city of Paterson.

It is not contended that the gate, as originally located, was within the circle of dense city population; nor are the counsel of the state understood to claim that the mere extension of the territorial limits of the town or city, by legislative enactment, can take away or impair the franchise of the turnpike company. But the point insisted upon is, that since the location of the gate, the circle of dense population and the line of city improvements has extended beyond it, and that, consequently, the right of the company to maintain the gate within those limits has ceased. No authority has been cited to sustain this principle, nor have I been able to find any. If a dense population should, in the course of time, extend the whole length of the road, it would hardly be contended that the franchise of the company to take tolls was thereby extinguished. But it is unnecessary to express any

opinion upon this point, as the evidence in the case does not warrant the application of the principle. That question can be fairly and fully investigated upon the re-trial, if the counsel of the state should deem it expedient. I am of opinion that the verdict should be set aside, and a new trial granted, and that the Court of Oyer and Terminer should be advised accordingly.